UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
MAHMOUD SHABAN & SONS CO.,                      :
:
              Plaintiff,          :
:
      v.                                        :
:
MEDITERRANEAN SHIPPING CO., S.A.,               :
and GLOBERUNNERS, INC., et al.,                 :   11 Civ. 6322
:
              Defendants.         :   **OPINION**
:
--------------------------------------------    :
:
GLOBERUNNERS, INC.,                             :
:
              Third-Party        :
              Plaintiff          :
      v.                                        :
:
AMERICAN COMMODITY COMPANY,                     :
LLC,                                            :
:
              Third-Party        :
              Defendant.         :
:
------------------------------------------------x

This dispute arises out of a simple incident: plaintiff Mahmoud Shaban and Sons Co., a Jordanian business, purchased several shipments of rice from American Commodity Company, LLC ("ACC"), a California rice supplier. The

1

rice was loaded into containers in California and shipped by sea to Jordan. But when the rice arrived it was odd smelling and infested with insects. Rather than being sold for human consumption, the rice was condemned by Jordanian public health authorities and could only be sold as animal feed at a substantial loss.

Mahmoud Shaban brought this suit to recover its loss in the Southern District of New York against the carrier of the rice, GlobeRunners, Inc., as well as the owner of the vessel on which the rice was shipped, Mediterranean Shipping Co. SA ("MSC"). GlobeRunners then filed a third-party complaint against ACC seeking indemnity or contribution since, it alleges, the rice was tainted when it was loaded into containers in California, at which point ACC had exclusive control over the cargo.

None of the parties has its principal places of business in the Southern District of New York and the transaction at issue did not touch the Southern District of New York. Rather, this dispute has come before this court thanks to a forum selection clause in the bill of lading that covered the shipment, negotiated between GlobeRunners and MSC, and that is the basis for this court's exerting personal jurisdiction over them. That clause reads, in part:

> 10.3 **Jurisdiction** — It is hereby specifically agreed that any suit by Merchant and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage

>contracted for hereunder was to or from the United States of America, in which case suit shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply.  The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum.  The Merchant waives any objection to the personal jurisdiction over the Merchant of the above agreed fora.

The definitions in the agreement provide that MSC is the "carrier" while "merchant" is defined expansively to include the "Shipper, Consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this Person."

There is also a corresponding bill of lading agreed to between ACC and GlobeRunners, but this instrument does not include a forum selection clause providing for the resolution of disputes in the Southern District of New York.  What it does include, however, is a clause in which ACC agreed to "defend, indemnify and hold the carrier harmless from and against any claims, loss, damage or fines … on the Goods before delivery to the carrier."  The third-party complaint does not mention this bill of lading but the court takes judicial notice of it and concludes that it is a document relied on by GlobeRunners and known to ACC when it made this motion.  On June 11, 2012, GlobeRunners demanded that ACC defend it under this agreement.

ACC argues that it is not subject to personal jurisdiction in the Southern District of New York   Therefore, it moves to dismiss GlobeRunners' third-party complaint.

The motion is denied.

**Discussion**

To survive a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant.  <u>Metro. Life Ins. Co. v. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).  In resolving such a motion at the pleading stage the court must assume the plaintiff's factual allegations to be true.  <u>Ball v. Metallurgie Hoboken-Overpelt, S.A.</u>, 902 F.2d 194, 197 (2d Cir. 1990).

In an action arising under federal question jurisdiction, the court will look to the law of the state where the court sits to resolve the question of personal jurisdiction over an out-of-state defendant.  <u>Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.</u>, 869 F.2d 34, 40 (2d Cir. 1989).  Therefore, to determine whether personal jurisdiction may be properly exercised, this court conducts a two-part analysis: whether the laws of New York permit personal jurisdiction, and if so, whether the exercise of personal jurisdiction under state law

comports with the due process requirements imposed by the Fifth Amendment. Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.2001).

However, when the parties have consented to jurisdiction by agreeing to a valid and enforceable forum selection clause the analysis is greatly simplified. Agreement to the clause establishes contacts sufficient to satisfy the jurisdictional requirements of both New York law and the Due Process Clause. See U.S. Bank Nat. Ass'n v. Ables & Hall Builders, 582 F. Supp. 2d 605, 615 (S.D.N.Y. 2008) (collecting cases). Furthermore, such agreements are *prima facie* valid and enforceable and can only be set aside by showing that enforcement "would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court." Id. at 612.

The primary issue relating to this motion is whether ACC can be bound by the forum selection clause in the bill of lading signed by GlobeRunners and MSC but not by ACC.

It was once well established that a shipping intermediary acts as a merchant's agent for the purposes of negotiating and agreeing to a forum selection clause. See, e.g., Home Assur. Co. ex rel. Stanley Door Sys. v. M/V Hanjin Marseilles, 03 Civ. 9539, 2004 WL 1197240 (S.D.N.Y. June 1, 2004); Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp. 2d 447, 457

(S.D.N.Y. 2002). Under this line of authority it is clear that ACC would indeed be bound by the forum selection clause; GlobeRunners would be deemed to have acted as ACC's agent in agreeing to it. However, these cases all predate the Supreme Court's decision in Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 34 (2004), which dealt with the question of whether an intermediary could bind a cargo owner by entering into a bill of lading with a carrier which limited the carrier's liability. The court held that this could be done stating, Id. at 33:

> The intermediary is certainly not automatically empowered to be the cargo owner's agent in every sense. That would be unsustainable. But when it comes to liability limitations for negligence resulting in damage, an intermediary can negotiate reliable and enforceable agreements with the carriers it engages.

The Court essentially reaffirmed, with considerable explanatory discussion, its earlier holding in Great N. R. Co. v. O'Connor, 232 U.S. 508 (1914).

The Kirby decision did not involve forum selection clauses, nor was this subject even mentioned in the decision, despite the fact that, as will be discussed shortly, the Court had on its docket at the same time as Kirby, a case which did involve a forum selection clause.

However, the Court did make statements which have implications regarding forum selection clauses. The Court stated, Kirby, 543 U.S. at 34:

> The principle derived from *Great Northern* does not require treating ICC as Kirby's agent in the classic sense. It only requires treating ICC as Kirby's agent for a *single, limited* purpose: when ICC contracts with subsequent carriers for limitation on liability.

Shortly thereafter the court stated, Id.: "...intermediaries, entrusted with goods, are 'agents' only in their ability to contract for liability limitations with carriers downstream."

Should a district court take these statements by the Supreme Court as really settling the question of whether a forum selection clause entered into by the intermediary can bind a shipper or an owner of goods?  Should a district court interpret the dicta of the Supreme Court as requiring the district court to hold that the intermediary's forum selection clause, which on its face applies to the shipper or owner of goods, cannot be so applied?  And in the face of apparently longstanding usage and judicial authority?

These are serious questions in light of the statements of the Supreme Court that the authority of the intermediary to act for the shipper or owner of goods is only for the purpose of allowing the carrier's liability to be limited.

However, the Supreme Court did not make any actual ruling about forum selection clauses.  And the extent of any implication from the Court's language is, of course, not in any way clear.  A highly plausible reading is that the Court sought to clarify its own prior ruling in Great N. R. Co. that, in its view, had come to be read too expansively as to the idea of the intermediary being an agent.

In interpreting the Kirby opinion, it is of interest to note that after granting certiorari in Kirby the Supreme Court also granted certiorari in a second case,

7

Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 294 F.3d 1171 (9th Cir. 2002).  While Kirby had to do with limitations of liability, Kukje Hwajae had to do with forum selection clauses — precisely the issue facing this court now.  The Supreme Court deferred its decision in that case pending its decision on Kirby.  But when Kirby was eventually decided, the Supreme Court issued a summary order vacating the 9th Circuit's holding in Kukje Hwajae and remanding it.  There were no instructions other than that the case should be reconsidered in light of Kirby.  Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 294 F.3d 1171, 1173 (9th Cir. 2002) cert. granted, judgment vacated sub nom. Green Fire & Marine Ins. Co., Ltd. v. M/V Hyundai Liberty, 543 U.S. 985, 125 S. Ct. 494, 160 L. Ed. 2d 368 (2004)

   The 9th Circuit, however, went on to resolve Kukje Hwajae without reaching the forum selection clause issue.  Kukje Hwajae Ins. Co., Ltd. v. M/V HYUNDAI LIBERTY, 408 F.3d 1250 (9th Cir. 2005).

    Since then, some district courts have concluded that the Kirby decision in fact does not alter the well-established rule that, to use the Supreme Court's metaphor, a shipping intermediary acts as the "upstream" merchant or carrier's agent when it agrees to a forum selection clause with a "downstream" carrier.  See A.P. Moller-Maersk A/S v. Ocean Express Miami, 550 F. Supp. 2d 454, 462-66 (S.D.N.Y. 2008).

In A.P. Moller-Maersk the court observed that the factors considered by the Kirby court were similarly applicable to both limitations of liability and forum selection clauses.  In both situations, the judicial recognition of a limited agency relationship between shipping intermediaries and an upstream merchant is necessary to enable downstream carriers to allocate important risks by contract.  And while the risk of a carrier's having to litigate in an inconvenient forum is perhaps less severe than the risk of unlimited liability, both would create substantial inefficiencies in the maritime shipping industry.  Businesses engaged in shipping freight by sea, by the nature of the business, will have contacts, dealings, and thus potential liability all over the globe.  With this widespread liability would come great expense if businesses had no reliable means of limiting the courts in which they might be made to litigate.  Accordingly, the well-established industry practices that have evolved to mitigate these risks ought to be respected by the courts.

The court concludes, therefore, that given the robust industry practice and well-developed case-law supporting it, it remains the law that an intermediary serves as the upstream merchant's agent for the purposes of agreeing to litigate in a particular forum.  The Kirby court noted the importance of the courts' providing a predictable legal backdrop for parties contractual arrangements.  This court's conclusion advances that laudable goal by leaving undisturbed a

rule with a long history of judicial endorsement and commercial reliance. Kirby, 543 U.S. at 36.

ACC contends, however, that even if it is a party to this forum selection clause, the clause does not cover a suit by GlobeRunners against ACC. Thanks to the respective definitions of "carrier" and "merchant" in the agreement, both ACC and, counterintuitively, GlobeRunners are "merchants" under the agreement. ACC argues, however, that the clause only covers suits by the carrier against a merchant, or vice versa, and not suits between merchants. But this is simply not the case. The clause covers "any suit by Merchant" and "any suit by the Carrier" (with one exception not relevant here) and makes no mention of the contemplated defendants of those suits.

Thus, the court holds that GlobeRunners acted as ACC's agent when it agreed to the forum selection clause in the bill of lading between GlobeRunners and MSC for the purposes of establishing personal jurisdiction.[1] That forum selection clause designated this district as the forum in which disputes arising under that bill of lading, including disputes between GlobeRunners and ACC, would be litigated. Therefore, ACC is subject to personal jurisdiction in this district in this action.

---

[1] It should be noted that the court does not hold that GlobeRunners acted as ACC's agent for the purposes of agreeing to each any every provision of § 10.6 of the bill of lading. The court's decision is confined to the question of whether GlobeRunners acted as ACC's agent when it agreed to the forum selection clause only for the narrow purpose of establishing personal jurisdiction.

ACC's agreement to defend and indemnify GlobeRunners, however, does not provide a basis for personal jurisdiction. Such an agreement only serves, under certain circumstances, to obligate ACC to mount a legal defense of GlobeRunners. This may mean that ACC must retain legal counsel to appear and defend GlobeRunners in court wherever GlobeRunners happens to be sued, but it does not subject ACC itself to personal jurisdiction in those fora as a party to the litigation. See, e.g., Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 855 (11th Cir. 2010) cert. denied, 130 S. Ct. 3473 (2010).

## Conclusion

ACC's motion to dismiss is denied.

So ordered.

Dated: New York, New York
January 28, 2013

_____
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jan 28, 2013