UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MAHMOUD SHABAN AND SONS CO.,              **ECF CASE**

        Plaintiff,                          **11 CIV 6322 (TPG)**

   - against -

MEDITERRANEAN SHIPPING COMPANY,
S.A., GLOBE RUNNERS INC., *in personam*,
and M/V MSC NATAL, M/V MSC VOYAGER,
M/V MSC CARACAS, M/V MSC SANTA
CELINA, M/V MSC VIENNA, M/V MSC
ANIELLO, M/V MSC ENGLAND, and M/V
MSC FABIENNE, their engines, boilers,
tackle, furniture, apparel, etc. *in rem*;

        Defendants.
------------------------------------------------------------x


**PLAINTIFF MAHMOUD SHABAN AND SONS CO.'S
MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
GLOBERUNNER INC.'S MOTION FOR SUMMARY JUDGMENT**



CHALOS & CO, P.C.

George M. Chalos, Esq.
Briton P. Sparkman, Esq.
55 Hamilton Avenue
Oyster Bay, New York, 11771
Tel: (516) 714-4300
Fax: (516) 750-9051

i

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ………………………………………………………… 1

FACTUAL AND PROCEDURAL BACKGROUND………………………………… 1

SUMMARY OF THE ARGUMENT……………………………………………….. 4

STANDARD OF REVIEW……………………………………………………………. 4

ARGUMENT……………………………………………………………………………… 5

POINT I.   GLOBERUNNERS IS LIABLE AS AN NVOCC…………………. 5

POINT II.  THE CARGO WAS IN GOOD ORDER AND CONDITION
           WHEN SHIPPED, AND WAS DAMAGED UPON OUTTURN…. 6

    A.  Plaintiff Has Provided Unchallenged Direct Evidence that
            the Cargo Was in Good Order and Condition……………………… 7

    B.  Alternatively, the Damage upon Outturn Establishes that
            the Cargo was Delivered in Good Condition……………………….. 9

    C.  If the Court must resolve disputed facts, Summary Judgment
            must be denied…………………………………………………………….. 10

POINT III. THE DEFENDANT HAS NOT ESTABLISHED THAT THE
           DAMGE WAS DUE TO AN EXCEPTED CAUSE OR THAT
           IT EXERCISED DUE DILIGENCE IN THE CARE OF
           THE CARGO…………………………………………………………… 10

CONCLUSION………………………………………………………………………. 12

**PRELIMINARY STATEMENT**

COMES NOW Plaintiff, Mahmoud Shaban and Sons Co. ("Plaintiff" or "Mahmoud"), by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and hereby files its Memorandum of Law in Opposition to Defendant Globerunners Inc.'s ("Globerunners") Motion for Summary Judgment [Doc. 68], and, as grounds therefore, states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

Between May and August 2010, Plaintiff Mahmoud entered into four (4) contracts with Third-Party Defendant American Commodity Company, LLC (hereinafter "ACC"), wherein Plaintiff agreed to purchase from ACC a minimum of 22,000 metric tons of U.S. Medium Grain Milled Rice, Calrose Variety, U.S. Grade No. 1 at varying prices indicated on the individual contracts. *See* Doc. 68, at Exhibit A. The contracts required ACC, as seller, to package the rice cargo in one (1) metric ton bulk tote bags and ship the cargo inside containers from California, USA to Aqaba, Jordan. *Id*. Each container held approximately twenty (20) metric tons (bags) of rice. The contracts further stated that the rice was to be exported across multiple shipments beginning in June 2010 with the last shipment to occur in March 2011. *Id*. In exchange, Plaintiff, as buyer, arranged for multiple irrevocable letters of credit to be issued in favor of ACC. *Id*.; *see also* Doc. 68, at Exhibit F.

ACC contracted with Defendant GlobeRunners Inc. (hereinafter "GlobeRunners") to arrange for the transportation of the containers from Oakland, California to Aqaba, Jordan in accordance with the terms of the contracts. *See* Doc. 68, at Exhibit B. Defendant GlobeRunners in turn contracted with Mediterranean Shipping Company S.A. (hereinafter "MSC") to act as an ocean carrier and transport the rice cargo amongst several shipments onboard various MSC vessels. *Id*., at Exhibit C, 30(b)(6) Deposition of GlobeRunners at 30-32.

ACC employed non-party OMIC USA, Inc. (hereinafter "OMIC"), to conduct inspections of the rice cargo at ACC's facilities prior to loading. *See* Exhibit 1, 30(b)(6) Deposition of GlobeRunners, 60:18-61:1. For each shipment of rice, OMIC USA, Inc., issued "Weight, Quality, Quantity and Analysis Certificates" confirming the rice was of sound quality, free from contamination and packaged in accordance with the terms of the contracts. *See* Exhibit 2 to the Sparkman Declaration. Each shipment also included Phytosanitary Certificates issued by the United States Department of Agriculture confirming that the cargo was inspected and free from quarantine pests and regulated non-quarantine pests. *See* Exhibit 3 to Sparkman Declaration. The containers were then sealed and loaded, and GlobeRunners issued bills of lading for each shipment to ACC and Plaintiff and arranged for the containers to be transported to the port of Oakland. *See* Exhibit 1, 30(b)(6) Deposition of Globerunners, 33:1-25. In addition, GlobeRunners' bills of lading confirmed that the cargo was received "clean onboard" MSC's designated vessel. *See* Doc. 68, at Exhibit B.

Upon arrival at the port of Oakland, California, the rice shipments were loaded onboard various MSC vessels. MSC issued a master bill of lading for each rice shipment. *See* Exhibit 5, to Sparkman Declaration. Each bill of lading identified the total number of sealed containers each holding twenty (20) metric tons of rice. *Id*. MSC's bills of lading listed GlobeRunners as the "Shipper" and identified Plaintiff as the "Consignee." *Id*. Furthermore, each bill of lading confirmed that the rice cargo was received in good order and condition and was clean onboard the designated MSC vessel. *Id*., *see also* 30(b)(6) Deposition of MSC at Exhibit 4, 48:19-25 – 49:1-15.

After sailing from the port of Oakland, California, the rice cargo was transshipped at multiple ports and placed onboard several MSC vessels before its arrival at Aqaba, Jordan. Id.,

38:24-25 – 39:2-5. Upon discharge of the rice cargo at the port of Aqaba, Jordan, it was discovered that fourteen (14) shipments were damaged by, among others, exposure to water, foreign odor of paint gum and various insects (including flying insects). *See* 30(b)(6) Deposition of MSC at Exhibit 4, 29:25 – 30:1-19.  Various surveyors inspected the rice cargo and confirmed the contamination.  In total, ninety-one (91) containers were either partially or totally infested with various insects; thirteen (13) containers were either partially or totally contaminated by exposure to foreign odors; and five (5) containers were exposed to water. *See* Doc. 7, Second Amended Complaint.  These damages caused the rice cargo to be condemned by the public health authorities and declared unfit for human consumption. *Id*. Consequently, Plaintiff was forced to mitigate its damages by selling the damaged rice cargo for animal feed at a greatly reduced price. *Id.*

On September 9, 2011, Plaintiff commenced the present action by filing an Original Verified Complaint (Doc. 1).  On September 30, 2011, Plaintiff filed an Amended Verified Complaint (Doc. 4) to include additional defendants. On January 19, 2012, Plaintiff filed a Second Amended Verified Complaint (Doc. 7) in connection with damage sustained to thirteen (13) shipments of rice by exposure to water, foreign odor of paint gum and insects.[1]  Therein, Plaintiff alleges that Defendants GlobeRunners as common carrier, and MSC, as ocean carrier of merchandise by water for hire, breached their obligations and duties under the Carriage of Goods By Sea Act (hereinafter "COGSA"), 46 U.S.C. 30701, note following. On September 27, 2013, GlobeRunners filed the instant motion for summary judgment against Plaintiff and for dismissal of the claims against it, despite the ongoing nature of discovery. *See* Doc. 68.

---

[1] After Plaintiff's Second Amended Verified Complaint was filed, it was discovered that a fourteenth (14th) shipment was also damaged.  Throughout discovery, Plaintiff has expressly reserved its right to further amend the complaint to include the additional shipment and expects to do so.

3

## SUMMARY OF THE ARGUMENT

In its motion, GlobeRunners asserts that because it was the NVOCC and the containers were "sealed," then the clean bill of lading cannot constitute *prima facie* evidence of delivery in good condition by the Plaintiff.  GlobeRunners argues that there has been no additional evidence over and above the Bills of Lading to show that the goods were delivered to the carrier in good order.  *See* Doc. 68, pp. 7-9.  Defendant's motion should properly be denied on the basis that discovery remains ongoing and therefore a motion for summary judgment and dismissal of Plaintiff's claims against it is wholly premature. *See* Fed. R. Civ. P. 56(d).[2]  As set forth in the Plaintiff's Rule 56.1 Counter-Statement and Argument below, Plaintiff has submitted uncontroverted factual evidence which establishes a *prima facie* case under COGSA to hold GlobeRunners liable as a common carrier, for Plaintiff's claims, pursuant to applicable Second Circuit authority.  Accordingly, the Motion for Summary Judgment must be denied in its entirety.

## STANDARD OF REVIEW

The standards governing motions for summary judgment are well-settled.  A court may grant summary judgment only where there is no genuine issue of material fact and the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (A dispute is genuine if, on the evidence presented, "a jury could return a verdict for the non-moving party."). *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct.

---

[2] Plaintiff Mahmoud respectfully reserves the right to supplement this Opposition to the Motion for Summary Judgment if necessary as additional fact depositions are scheduled to take place the week of October 28, 2013. At a minimum, this Honorable Court should defer ruling on GlobeRunners motion pending the completion of fact and expert discovery.  Furthermore, Plaintiff anticipates filing its own motion(s) for Summary Judgment against Defendants, once necessary discovery has been completed and the dispositive motions are ripe for consideration by the Court.

1348, 89 L. Ed. 2d 538 (1986) (The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial.")(quoting Fed. R. Civ. P. 56 advisory committee's note).

Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party. *See NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178-79 (2d Cir. 2008). In evaluating a motion for summary judgment, the court is required to "view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments . . . ." *Wevant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (citations omitted); *see also In re "Agent Orange" Prod. Liab. Litig.,* 517 F.3d 76, 87 (2d Cir. 2008).[3]

## ARGUMENT

**POINT I.    GLOBERUNNERS IS LIABLE AS AN NVOCC**

This is a maritime action commenced under Rule 9(h) of the Federal Rules of Civil Procedure and arises under the admiralty jurisdiction of the Court. 28 U.S.C. § 1333. COGSA, 46 U.S.C. App. § 1300 *et seq.*, (currently found at 46 USCS § 30701, note following,)[4] by its terms, applies to the international shipment of goods to or from ports of the United States

---

[3] When ruling on summary judgment, the District Court need only consider admissible evidence. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment."). Rule 56(c)(4) of the Federal Rules of Civil Procedure requires that affidavits "be made on personal knowledge, [and] set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). Accordingly, this Court is free to strike or disregard inadmissible statements in Defendant's Summary Judgment Motion and Statement of Undisputed Material Facts. *See Patterson v. County of Oneida*, 375 F.3d 206, 219, 222-23 (2d Cir. 2004); *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 197-98 (2d Cir. 1999); 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[4][a] (affidavits, deposition testimony, and documents containing inadmissible evidence properly disregarded).

[4] *See Marinor Assocs. v. M/V Panama Express*, 2011 U.S. Dist. LEXIS 16964, 17-18 (S.D. Tex. 2011) ("COGSA was previously codified in the appendix to Title 46 of the United States Code. When Title 46 was recodified in 2006 by Pub.L. 109-304, Oct. 6, 2006, 120 Stat. 1485, COGSA was not included except as a statutory note to the first section of the Harter Act, 46 U.S.C. § 30701.") (citing David W. Robertson & Michael F. Sturley, *Recent Developments in Admiralty and Maritime Law at the National Level and in the Fifth and Eleventh Circuits*, 32 Tul. Mar. L.J. 493, 500 (2008) (explaining the codification issues and that COGSA was not repealed or revised by the recodification)).

"…from the time when the goods are loaded on to the time when they are discharged from the ship." *Id.*, at Note § 1(e). COGSA, requires carriers to, *inter alia*, "properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." *Id.*, at Note § 3(2).

In the present case, GlobeRunners acted as the NVOCC and is subject to COGSA. *See* Doc. 68, p. 5 (citing *Prima U.S. v. Panalpina. Inc.*, 223 F.3d 126 (2d Cir. 2000)). As NVOCC, GlobeRunners "arranges for the shipment of cargo, but does not itself own a ship." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 106 (2d Cir. 1997). Notwithstanding, GlobeRunners as NVOCC is a "**carrier** responsible for the through transportation of [the cargo], including the water portion." *M. Prusman Ltd. v. M/V Nathanel*, 670 F. Supp. 1141, 1143 (S.D.N.Y. 1987) (quoting *Fireman's Fund Am. Ins. Cos. V. Puerto Rican Forwarding Co.*, 492 F.2d 1294, 1295 (1st Cir. 1974))(emphasis added). GlobeRunners common carrier status as an NVOCC does not relieve it from potential liability, and as such, summary judgment must be denied, despite GlobeRunners self-serving designation as a "travel agent, but for freight." *See* Exhibit 1, 30(b)(6) Deposition of GlobeRunners at 15:23-24.

### POINT II.   THE CARGO WAS IN GOOD ORDER AND CONDITION WHEN SHIPPED, AND WAS DAMAGED UPON OUTTURN

Plaintiff establishes a *prima facie* case under COGSA by proof of delivery of the cargo to the carrier in good order and condition, and outturn or delivery at destination in a damaged condition. *Vana Trading Co. v. S/S METTE SKOU*, 556 F.2d 100, 1977 AMC 702, cert. denied, 434 U.S. 892, 1978 AMC 1898 (1977); *see also Bally, Inc. v. M.V. Zim Am.*, 22 F.3d 65, 68-69 (2d Cir. 1994); *Caemint Food, Inc. v. Brasiliero*, 647 F.2d 347, 351-52 (2d Cir. 1981); *GFT U.S.A. Corp. v. M/V Export Freedom* 1995 U.S. Dist. LEXIS 6347, at *11 (S.D.N.Y. 1995). Here, Plaintiff Mahmoud has satisfied the first element of its initial burden of proof by way of the clean bills of lading. *See* Doc. 68, at Exhibit B.

GlobeRunners' own witness, Mr. Steven Villata confirmed that it was Defendant's belief that the cargo was loaded in good order and condition. *See* Exhibit 1, 30(b)(6) Deposition of GlobeRunners at 23:13-24.  Mr. Villata continued:

> Q. Do you have any reason to believe that the cargo was not loaded in these –
> - I'm sorry – the cargo represented in these 14 bills of lading was not loaded in good order and condition?
> A. I wouldn't have any reason to believe that, no.

*Id.*, 30(b)(6) Deposition of GlobeRunners at 24:10-13.   Accordingly, the first element is satisfied and acknowledged by Defendant's own witness.

Plaintiff has also satisfied the second element of its *prima facie* case as evidenced by the damaged condition of the cargo at outturn.

> Q. Did you personally inspect the cargo in Jordan?
> A. No.
> Q. Did you send someone to inspect the cargo in Jordan?
> A. Not me personally.
> Q. Is there any doubt in your mind that the cargo was, in fact, damaged as claimed?
> A. No.
> Q. No doubt?
> A. No.

*See* Exhibit 4, 30(b)(6) Deposition of MSC at 30:9-19; *see also* Exhibit 1, 30(b)(6) Deposition of Defendant GlobeRunners at 67:7-13, confirming that water, odor, and insect infestation damage was observed upon delivery and no material dispute by the Defendants that the damage occurred.

### A. Plaintiff Has Provided Unchallenged Direct Evidence that the Cargo Was in Good Order and Condition.

The crux of GlobeRunners' Motion for Summary Judgment is based upon a factual misstatement, *i.e.* that Plaintiff has "failed to produce any additional evidence over and above the Bills of Lading," that the goods were delivered to the carrier in good order.  GlobeRunners then applies this factually incorrect and erroneous statement to two (2) Second Circuit cases which it

7

primarily relies upon as the basis for summary judgment. *See* Doc. 68, pp. 7-9 (citing *Caemint Food, Inc. v. Brasileiro*, 647 F.2d 347, 352 (2d Cir. 1981); *Bally, Inc. v. M.V. Zim America*, 22 F.3d 65, 69 (2d Cir. 1994)).[5] In reality, and as set forth in Plaintiff's Rule 56.1 Counter-Statement of Additional Facts, there were at a minimum three (3) additional independent documents which *prima facia* establish the good order and condition of the cargo prior to its delivery to the carriers. Specifically, the OMIC "Health Certificates", the OMIC "Weight, Quality, Quantity, and Analysis Certificates", and the United States Department of Agriculture Phytosanitary Certificates, all provide independent evidence that the cargo shipments of rice were in good order and condition. *See* Exhibit 2 and Exhibit 3, respectively.

The Health Certificates certify that the cargo of rice was "[F]rom USA and are fit for human consumption and free from any harmful material." *See* Exhibit 2. The "Weight, Quality, Quantity, and Analysis Certificates" confirm that the cargo of rice was "in conformity with the specification of US No. 1 medium grain well milled rice Camolino-California Calrose rice, current crop year, max broken 4pct, the rice is to be of sound, loyal, and merchantable quality free from weevils/insects at time of shipment and free from foreigner smell." *Id.* The United States Department of Agriculture Animal and Plant Health Inspection Service also attended prior to loading and shipment to inspect the shipments. The Phytosanitary Certificates issued by the United States Department of Agriculture included certification that:

---

[5] Globerunner's reliance on *Caemint* and *Bally* is misplaced and it is not instructive for this Court's analysis of the motion for summary judgment. First, both cases were appeals after full trials, and were not decided as motions for summary judgment. The Second Circuit Court of Appeals was reviewing findings and conclusions of law made by the trial court. *Bally, 22 F.3d at* 70; *Caemint*, 647 F.2d at 349. In *Bally*, the Second Circuit, in reaching its decision, relied in part on the consignee's own failure to give timely notice of loss, which created a presumption that the carrier delivered the cargo in good order. *Bally, 22 F.3d at* 71. A distinguishing fact which has not been (and cannot be) asserted by Defendant in this matter (nor could undisputed facts alleging same be asserted based on the record). Lastly, even the Court in *Bally* recognized that "[t]he significance of a security seal … of course will depend on the unique facts of the case. Delivery by a carrier of a container with an intact seal does not conclusively prove that loss did not occur while the container was in the carrier's possession." *Id.*, at 70.

> "the plants, plant product or other regulated articles described herein have been inspected and/or tested according to appropriate official procedures and are considered to be free from the quarantine pests, specified by the importing contracting party and to conform with the current phytosanitary requirements of the importing contracting party including those for regulated non-quarantine pests."

*See* Exhibit 3.

This is the exact type of evidence which the Second Circuit Court of Appeals has confirmed a plaintiff may utilize in addition to a clean Bill of Lading in order to establish a *prima facie* case against a carrier where the cargo was "sealed." *See Vana Trading Co. v. S/S METTE SKOU*, 556 F.2d 100, 105 fn. 8 (2d Cir. N.Y. 1977) ("There was evidence in the form of the certificate by the Instituto Colombiano Agropecuario of the Republic of Colombia's Ministry of Agriculture . . . that the cargo at time of shipment was in good order and condition."); *see also Transatlantic Marine Claims Agency Inc. v. M/V OOCL INSPIRATION*, 137 F.3d 94, 98 (2d Cir. 1998).

### B. Alternatively, the Damage upon Outturn Establishes that the Cargo was Delivered in Good Condition

As the confirmation by the Defendants of the damages at outturn establishes, the cargo was discovered damaged upon delivery of the shipments to the Port of Aqaba, Jordan. The Second Circuit Court of Appeals held in *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL INSPIRATION,* that a plaintiff need not produce direct evidence that the cargo was in "good order" when shipped, if the condition of the cargo as delivered, or the "characteristics of the damage suffered justifies the conclusion that the harm occurred while the goods were in the carrier's custody." 137 F.3d 94, 97 (2d Cir. 1998). The Second Circuit reasoned this method of proof:

> is available because not infrequently a plaintiff who is unable to provide specific evidence as to the condition of the goods at delivery or outturn, can nonetheless

> show, by the nature of the damage, that the injury complained of happened to the cargo while it was in the carrier's custody. And the whole point of the prima facie requirements in COGSA, as our cases have repeatedly emphasized, is to establish that the damage to the goods occurred while under the supervision of the defendant.

*Id.*, at 99; *see also Arkwright Mut. Ins. Co. v. M/V ORIENTAL FORTUNE*, 745 F. Supp. 920, 923 (S.D.N.Y. 1990) ("[i]ndeed, the condition of the cargo upon outturn and the type of damage sustained can be such as to mandate a finding that the cargo was in good order upon shipment."). Here, Plaintiff has established *prima facie* evidence of damages which, when viewed in the light favorable to the non-moving party, support Plaintiff's contention that the damage occurred during the period that the cargo was in the possession of the Defendants.

### C. If the Court must resolve disputed facts, Summary Judgment must be denied.

Finally, it is respectfully submitted that if this Honorable Court finds that Defendant's arguments tend to show that the Plaintiff's *prima facie* case depends on a resolution of one (1) or more disputed facts, then the Court should set the matter for trial. See *Transatlantic Marine Claims Agency, Inc. v. M/V OOCL INSPIRATION,* 137 F. 3d 94, 97 (2d Cir. 1998), citing *Seguros Banvenez, S.A. v. S/S OLIVER DRESCHER*, 761 F. 2d 855, 860 (2d Cir. 1985); *see also Cholita Corp. v. M/V MSC Mandraki*, 2011 U.S. Dist. LEXIS 39138, *11-12 (S.D.N.Y. 2011).

### POINT III. THE DEFENDANT HAS NOT ESTABLISHED THAT THE DAMGE WAS DUE TO AN EXCEPTED CAUSE OR THAT IT EXERCISED DUE DILIGENCE IN THE CARE OF THE CARGO

GlobeRunner's Motion for Summary Judgment is premised on the flawed analysis that Plaintiff has not met its *prima facie* burden under COGSA. *See* Point II, *supra*. However, as described in Point II above, Plaintiff's *prima facie* case has been established, and, as a result, the burden shifts to the carrier to prove that the damage either falls under one of COGSA's "excepted" causes, or that the carrier exercised due diligence to avoid and prevent the harm. *C.*

*Itoh & Co., Inc. v. Hellenic Lines, Ltd.*, 470 F. Supp. 594, 596, 1979 A.M.C. 1923, 1924 (S.D.N.Y. 1979); *see also Vana Trading Co.*, 556 F. 2d 100.; *Mamiye Bros. v. Barber Steamship Lines, Inc.*, 241 F. Supp. 99 (S.D.N.Y.1965), *aff'd*, 360 F.2d 774 (2d Cir.), cert. denied, 385 U.S. 835, 87 S. Ct. 80, 17 L. Ed. 2d 70 (1966).

Once a plaintiff has established a *prima facie* case for recovery, the burden rests with the defendant to affirmatively show that the immediate cause of the damage was an "excepted cause" for which the law does not hold it responsible, or that it exercised due diligence to avoid and prevent the damage. *Bally*, 22 F.3d at 69; *see also Levitano Co. v. M/S HELVIG TORM*, 295 F. Supp. 725, 736 (S.D.N.Y. 1968). The evidentiary burden thrust upon the defendant is such that he may bear "the responsibility for a loss which, in fact, may not be due to his fault, merely because the law, in pursuance of a wise policy, casts on him the burden of showing facts relieving him from liability." *Levitano Co.*, 295 F. Supp. at 736 (quoting *Schnell v. The Vallescura*, 293 U.S. 296, 307, 55 S. Ct. 194, 197, 79 L. Ed. 373 (1934)); *see also Missouri Pacific Railroad Co. v. Elmore & Stahl*, 377 U.S. 134, 84 S. Ct. 1142, 12 L. Ed. 2d 194 (1964).

In order to exculpate itself from liability, Defendant must provide positive evidence showing that the damage falls under one of COGSA's statutorily defined exceptions, or that it was in no way negligent in its handling of Plaintiff's cargo. Defendant GlobeRunners has not, and cannot, make such a showing in this case. In fact, it is GlobeRunners own witness Mr. Villata who confirmed that even GlobeRunners did not believe that the damage claimed in this case occurred prior to delivery to the Defendant carriers.

    Q.    Do you know if ACC pursued the claim with RLI[6]?
    A.    I know that RLI had the claim pursued by them with somebody and that they rejected it.
    Q.    Do you know why?

---

[6] RLI is RLI Marine Insurance who issued a Marine Coverage Policy for the shipments in question.

| | |
|---|---|
| A. | My understanding is -- from, I believe, emails I got from RLI -- they believed that the insects were inherent in the rice. That was their presumption from the beginning, I believe. |
| Q. | Did you agree with that assumption? |
| A. | No, I did not. |
| Q. | Why not? |
| A. | I think it's a fairly broad or generous assumption to make when the shipper ACC has the certificates from OMIC stating that the cargo is free of pests at time of loading. The cargo is – my understanding of the process is that it's inspected by OMIC. Again, I don't have a relationship with OMIC. I don't know their process. But they are there to inspect. I know they reject containers. I know there is a certificate issued. I made that point to the insurance company that you can't just make the quick assumption that this was inherent in the cargo because they have certificates stating otherwise. |

*See* Exhibit 1, 30(b)(6) Deposition of GlobeRunners, at 60:6-25 - 61:1-4

Defendant GlobeRunners has not (and cannot) produce any credible evidence to contend that it would not be liable as carrier for the damage to the cargo; including the water damage, odor damage, and insect infestation. Accordingly, Summary Judgment in favor of Defendant GlobeRunners and dismissal Plaintiff's claims is not warranted and must be denied in its entirety.

## CONCLUSION

For the reasons set forth above, and what may be added at oral argument, Plaintiff respectfully submits that Plaintiff has established material facts which evince, at a minimum, that Plaintiff has made a prima facia case for liability against Defendant GlobeRunners as a matter of law, and as such, GlobeRunners is not entitled to summary judgment and Plaintiff's claims should not be dismissed as to Defendant GlobeRunners.

Dated: October 15, 2013
      Oyster Bay, New York                    CHALOS & CO, P.C.
                                                   *Attorneys for Plaintiff*

                                                   MAHMOUD SHABAN AND SONS CO.


                                    By:    /s/ Briton P. Sparkman
                                                 George M. Chalos (GC-8693)
                                                 Briton P. Sparkman (BS-5220)
                                                 55 Hamilton Avenue
                                                 Oyster Bay, New York 11771
                                                 Tel: (516) 714-4300
                                                 Fax: (516) 750-9051
                                                 E-mail: gmc@chaloslaw.com
                                                                 bsparkman@chaloslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2013, I caused to be served upon all counsel of record, the foregoing Opposition to Defendant GlobeRunners Inc.'s Motion for Summary Judgment, Attorney Declaration of Briton P. Sparkman (with Exhibits 1-5); and Plaintiff's Counter-Statement of Facts, by and through the Court's CM/ECF System.

             CHALOS & CO, P.C.

By: /s/ Briton P. Sparkman
    Briton P. Sparkman